IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRAVIS MCARTHUR,<br><br>  Plaintiff,<br><br><br><br>vs.<br><br><br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; DOES 1 through 100; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:09-CV-416 TS |

This matter is before the Court on the parties' Cross Motions for Summary Judgment, and Defendant's Motion to Strike Declarations of A. Bryce Dixon. This dispute arises over an exhaustion provision in the underinsured motorist ("UIM") coverage in the policy provided to Plaintiff by Defendant.[1] Plaintiff argues that this provision is void for public policy, while Defendant maintains it is in line with and in furtherance of Utah's statutory language. Defendant argues that Mr. Dixon's declarations should be stricken because he represents Plaintiff and

---

[1] Docket No. 13 at ¶ 13; Docket No. 16 at 2.

1

therefore should not be permitted to offer testimony in this case.  Because the declarations of Mr. Dixon could effect the outcome of the summary judgment motion it will be addressed first.

## I. Jurisdiction and Venue

This Court has jurisdiction on the basis of Diversity of Citizenship pursuant to 28 U.S.C. § 1332(a), because the parties are diverse and the amount in controversy, Plaintiff's personal injuries and hospital expenses, exceeds $75,000.

## II. Factual Background

Defendant disputes a portion of Plaintiff's undisputed facts.  Under normal circumstances when considering a motion for summary judgment, the Court would take the facts in the light most favorable to the nonmoving party.[2]  In this case, however, the Court is presented with cross motions for summary judgment.  Therefore, the Court will recite only those facts which appear to be obvious and undisputed in order to put the issue into context.

Plaintiff was involved in an accident while operating his motorcycle.[3]  Plaintiff received $90,000 of the $100,000 liability insurance policy from the tortfeasor's liability carrier.[4]  Plaintiff made a demand on Defendant to pay its policy limits of UIM coverage of $100,000.[5]  Defendant denied the claim because Plaintiff was not paid the full liability limits of the tortfeasor's insurance policy.[6]  Plaintiff brought this action seeking payment of the policy limits of his UIM

---

[2]*Durham v. Herbert Olbrich GMBH & Co*., 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990)).

[3]Docket No. 1 at ¶ 7; Docket No. 16 at 5.

[4]Docket No. 1 at ¶ 27; Docket No. 5 at ¶ 27.

[5]Docket No. 1 at ¶ 26; Docket No. 5 at ¶ 26.

[6]Docket No 1. at ¶ 27; Docket No. 5 at ¶ 27.

policy.

### III. Motion to Strike

Defendant argues this Court should strike the Declarations of A. Bryce Dixon based on Fed. R. Civ. P. 56(e)(1) and Rule 3.7(a) of the Utah Rules of Professional Conduct. Plaintiff has not filed a response to this Motion, therefore the Court is entitled under DUCiv R 7-1(d) to grant the motion without further notice.[7] However, before granting the motion, the Court will briefly address additional rationale in support of its conclusion.

In support of Plaintiff's Motion for Summary Judgment, Mr. Dixon has submitted a declaration containing at least three statements of opinion:

> 1) My evaluation of Mr. McArthur's general damages from the said motorcycle accident was that they exceeded $200,000.
> 2) Because of his impecunious circumstances Mr. McArthur was constrained to accept a $90,000 settlement of the available $100,000 in liability.
> 3) Because the tortfeasor's insurance carrier refused to pay full policy limits, Mr. McArthur's only alternative was to file a lawsuit against the tortfeasor. However, the cost in time and money for such a suit would have been much greater than the additional $10,000 insurance he was entitled to recover for his injuries against the liability carrier of the tortfeasor. Therefore, he felt compelled by his circumstances to accept less than policy limits.[8]

The issue presently before the Court is a legal one, whether or not the exhaustion clause is valid, or void for public policy. Therefore the Court finds the statements made by Mr. Dixon in his declaration both unnecessary and irrelevant to the matter at hand. Moreover, the statements are in the nature of opinion, not fact, and therefore do not meet the requirements of Fed. R. Civ. P. 56 (e)(1).[9] If the statements were relevant to the matter at hand, this Court might

---

[7] DUCivR 7-1(d).

[8] Docket No. 14, at ¶¶ 3, 5, 6.; Docket No. 13 at ¶¶ 11, 19, 20.

[9] Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.")

consider them because the rationale for excluding the advocate from testifying are not currently present.[10]  Because there is no jury at this point in time, the Court finds these statements would neither confuse nor mislead the Court, regarding the attorney's role as both an advocate and a witness, in its determination of this issue.[11]

Regardless, the Court finds these are opinion statements, not relevant to the current determination and therefore will strike the declaration.  Moreover, because Plaintiff has not responded to this Motion the Court will grant it.

### III. Summary Judgment

*A. Standard of Review*

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[12]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[13]  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial, if he does not so respond, summary judgment, if appropriate, shall be entered against him."[14]

*B. Discussion*

Under Utah law, insurance policies are construed "pursuant to the same rules applied to

---

[10] *See* Utah Rules of Professional Conduct, rule 3.7, Comment 1, 2, *available at* http://www.utcourts.gov/resources/rules/ucja/ch13/3_7.htm

[11] *Id.*

[12] *See* FED. R. CIV. P. 56(c).

[13] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[14] FED. R. CIV. P. 56(e)(2).

ordinary contracts."[15] The existence of ambiguity in a contract is a question of law.[16] If an insurance policy is ambiguous, all doubts are resolved in favor of the insured.[17] If, however, the policy is clear and unambiguous, the language is "construed according to its usual and ordinary meaning."[18]

A state's statutes are a reflection of its public policies.[19] If the plain language is unambiguous then the Court need not look beyond it, and no other interpretive tools are needed in analyzing the statute.[20] In Utah, an underinsured motor vehicle is one that "has insufficient liability coverage to compensate fully the injured party for all special and general damages."[21] "The named insured's underinsured motorist coverage is secondary to the liability coverage of an owner or operator of an underinsured motor vehicle. . ."[22] Utah law provides:

> Within five business days after notification that all liability insurers have tendered their *liability policy limits*, the underinsured carrier shall either (i) waive any subrogation claim the underinsured carrier may have against the person liable for the injuries caused in the accident; or (ii) pay the insured an amount equal to the policy limits tendered by the liability carrier.[23]

---

[15] *State Farm Mut. Auto. Ins. Co. v. DeHerrera*, 145 P.3d 1172, 1174 (Utah Ct. App. 2006) (quoting *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428, 432 (Utah 2006)) (internal citations omitted).

[16] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[17] *Id.* (citing *Fuller v. Dir. of Fin.*, 694 P.2d 1045, 1046 (Utah 1985); *Utah Farm Bureau v. Orville Andrews & Sons*, 665 P.2d 1308, 1309 (Utah 1983)).

[18] *Id.* (citing *Fire Ins. Exch. v. Alsop, D.C.*, 709 P.2d 389, 390 (Utah 1985)).

[19] *Farmers Ins. Exch. v. Hurley*, 90 Cal. Rptr. 2d. 697, 701 (Cal. App. 4th 1999); *Lemna v. United Servs. Auto Ass'n*, 652 N.E.2d 482, 484 (Ill. App. 3d 1995).

[20] *R&R Indus. Park, L.L.C. v. Utah Prop. and Cas. Ins. Guar. Ass'n*, 199 P.3d 917, 921-23 (Utah 2008) (citing *Evans v. State*, 963 P.2d 177, 184 (Utah 1998); *State v. Barret*, 127 P.3d 682, 689 (Utah 2005)).

[21] UTAH CODE ANN. § 31A-22-305.3(1)(b)(i).

[22] *Id.* § 31A-22-305.3(2)(f)(i).

[23] *Id.* § 31A-22-305.3(5)(a) (emphasis added).

Utah requires insurance companies provide UIM coverage to every person in Utah who drives a motor vehicle.[24] UIM coverage may only be waived by an insured through an express written form that "includes a reasonable explanation of the purpose of the underinsured motorist coverage and when it would be applicable."[25]

Insurance contracts are treated no differently than ordinary contracts, and interpretation begins with the terms themselves.[26] The contract in question contains the following "exhaustion clause" provision:

> We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motorist vehicle. Bodily inury must be sustained by an insured and caused by an accident arising out of the operation, maintenance, or use of an underinsured motor vehicle.
> THERE IS NO COVERAGE UNTIL:
> 1. THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS TO OTHER ***PERSONS; OR***
>
> 2. SUCH LIMITS OF LIABILITY OR REMAINING PART OF THEM HAVE BEEN OFFERED TO THE ***INSURED***.[27]

This clause is both clear and unambiguous, and therefore will be "construed according to its usual and ordinary meaning."[28] "When the language of the contract is unambiguous, then the parties' intentions must be determined solely from the language of the contract."[29] Therefore, the contract provision will stand unless it can be declared void for public policy.

Decisions voiding exhaustion clauses on public policy grounds generally do not have

---

[24]*Id.* § 31A-22-305.3(2)(b).

[25]*Id*. § 31A-22-305.3(2)(g).

[26]*DeHerrera*, 145 P.3d at 1174.

[27]Docket No. 16-3 at 15.

[28]*Alf*, 850 P.2d at 1274.

[29]*Fortress Fin. & Pension Serv., Inc. v. Watkins*, 2003 WL 22753026, at *2 (Nov. 13, 2003).

state statutes authorizing or suggesting such provisions; instead the exhaustion provision is only contained in the insurance policy itself.[30] Other jurisdictions with a governing statute have relied on the plain meaning of the language in the statute in upholding exhaustion provisions.[31] At least one court has held the exhaustion provision to be void against public policy only when it was expanded to require the injured party to fully recover against a tortfeasor who was neither the owner nor operator of the motor vehicle causing the injury.[32]

As discussed above, the Utah underinsured statute states, "[w]ithin five business days after notification that all liability insurers have tendered their liability policy limits. . ."[33] the underinsured carrier must either pay the insured or waive subrogation rights.[34] The Merriam-Webster Dictionary defines limit as the utmost extent.[35] The plain meaning of this provision must therefore be interpreted as an exhaustion clause. The insurer only has to pay within five days of notification that the utmost amount of the liability policy of the torfeasor has been paid. Because the statute mandates all drivers to have a UIM policy, absent a specific set of circumstances, and the statute directs the UIM carriers to pay benefits only after all liability insurers have tendered the limits of their policies, the legislature has stated in clear, unambiguous terms both the requirements of UIM coverage and the public policy of Utah as well.

The contract language mirrors the statute in requiring the limits of the other available liability policies be paid out before the underinsured carrier, Defendant in this case, is liable to make additional payments to the insured. Although the Court is cognizant of the compelling public policy reasons for exhaustion clauses generally to be void for public policy, in the face of

---

[30] *Hurley*, 90 Cal. Rptr. 2d. at 700; *Curran v. Progressive Northwestern Insur. Co.*, 29 P.3d 829, 838 (Alaska 2001); *see also Danbeck v. American Family Mutual Insur. Co.*, 605 N.W.2d 925, 928 (Wis. Ct. App. 1999).

[31] *Lindsey v. Southern Farm Bureau*, 596 F.Supp.2d 1245, 1249 (W.D. Ark. 2009).

[32] *Pa. Mfrs. Ass'n. v. Gordon*, 1993 WL 427372, at *4 (E.D. Pa. Oct. 21, 1993).

[33] UTAH CODE ANN. § 31A-22-305.3(5)(a).

[34] *Id*. at § 31A-22-305.3(5)(a)(i)-(ii).

[35] The Merriam-Webster Dictionary 302 (1998).

clear language from the legislature it will refrain from so holding. The Court understands and is sympathetic to the legitimate policy concerns, but does not believe its role is to make policy and will leave that duty to the legislature.

Additionally the Court is aware of other challenges to the limitations of Utah's underinsured motorist coverage whose public policy arguments were rejected by the Utah Court of Appeals. In *Phillips v. Farmers Insurance Group*,[36] plaintiff challenged a trial court ruling that the Utah Code section 31A-22-305(8)(b) specifically authorized Farmers to deny coverage under that provision. Looking at the statute as a whole, and the provided definition of "underinsured motor vehicle" the court found the provisions "clearly and unambiguously" precluded the plaintiff's claim.[37] The court went on to state that it rejected plaintiff's public policy argument because the policy provisions that limit underinsured motorist coverage are specifically authorized by the statute.[38]

In *State Farm Mutual Auto. Insur. Co. v. Green*,[39] the Supreme Court of Utah also rejected a public policy argument to void a contractual provision in a UIM coverage plan. That case dealt with a consent to settle exclusion which required the insured to procure State Farm's written consent before entering into any settlement agreement.[40] Plaintiff argued that giving the insurer instead of the victim control over litigation frustrated the statute's goal of making recovery available for victims of underinsured motorists.[41] The court stated that "[w]here a statutory scheme allows consumers the option of refusing coverage altogether, it is difficult to see how a policy that simply attaches conditions to coverage could be unenforceable as against

---

[36] 2005 WL 1477061 (Utah Ct. App. June 23, 2005).

[37] *Id*. at *1.

[38] *Id*.

[39] 89 P.3d 97 (Utah 2003).

[40] *Id*. at 101-102.

[41] *Id*. at 101.

public policy."[42] The events surrounding the *Green* case occurred before the current exhaustion clause was included in the statutory framework, and therefore the court noted the requirement that an "insurer respond within five business days to notification that 'all liability insurers have tendered their liability policy limits,'" is inapplicable to this case.[43] The *Green* court also used the above provision to contravene plaintiff's argument that the consent to settle violates the purpose of the scheme, therefore, violating public policy.[44]

Although the *Green* court ultimately found that the insured must be paid, the basis for that holding was that the breach, in not getting the proper consent from State Farm, was not a material breach. That outcome is distinguishable from the situation currently before the Court. First, the *Green* court specifically acknowledged the statutory scheme controlling the present litigation and alluded to the fact that had the current legislation controlled that case the outcome would have been different.[45] Second, the exhaustion requirement is a condition precedent to recovery from the UIM carrier, not an ordinary term capable of being breached by either party. A breach of this term would only occur if the liability limit was exhausted and the UIM carrier still refused to pay.

To reiterate, because Utah does have a statutory scheme that contemplates and requires such an exhaustion provision the Court finds this clause is not void for public policy.

Plaintiff relies on Utah's long held public policy of encouraging settlements to argue the exhaustion clause contravenes Utah's public policy.[46] Plaintiff also cites case law voiding contract provisions in an attorney-client fee agreement which give the attorney control over the settlement of a lawsuit because such provisions "run afoul of the policy to encourage settlements

---

[42]*Id*.

[43]*Id*. at 102.

[44]*Id*.

[45]*Id*.

[46]*Iron Head Construction, Inc. v. Gurney*, 207 P.3d 1231, 1235 (Utah 2009).

of causes and differences between persons."[47]  Plaintiff cites to two cases, one from Montana and the other from Nevada, specifically holding an exhaustion clause void for public policy, both are distinguishable.[48]  The *Augustine* court recognized that "[n]either the Montana Legislature nor this Court have specifically addressed the issue of whether an exhaustion clause in an underinsurance policy is enforceable under public policy."[49]  Similarly, because the Nevada statutes do not include an exhaustion clause, the *Mann* court concluded that the "Nevada Legislature intended that uninsured and underinsured motorist benefits be available to Nevada citizens."[50]

Unlike Montana and Nevada, the Utah legislature has addressed the issue.  The underinsured statute itself contains language contemplating the situation.  It instructs underinsured carriers to make payments to the insured, within five business days after being notified that "all liability insurers have tendered their liability policy limits."[51]  Because the Utah legislature has included the equivalent of an exhaustion clause within the statutory frame work itself, and state statutes are reflections of the State's public policies, the contract provision in question cannot be a violation of such policies.  Second, the exhaustion requirement is a condition precedent to recovery from the UIM carrier, not an ordinary term capable of being breached by either party.  A breach of this term would only occur if the liability limit was exhausted and the UIM carrier still refused to pay, this is not the situation currently before the Court.  Moreover, as previously discussed, this Court will leave policy determinations to the legislature.

---

[47]*Parents Against Drunk Drivers v. Grayston Pines Homeowners' Assoc.*, 789 P.2d 52, 55 (Utah Ct. App. 1990).

[48]*Augustine v. Simonson*, 940 P.2d 116; *Mann v. Farmers Ins. Exch.*, 836 P.2d 620 (Nev. 1992).  Both cases held the exhaustion clauses to be void for public policy based on the same rationale.  The courts stated the provision, promotes litigation and expenses, delays payment of benefits, fails to consider legitimate reasons for settlement, and fails to acknowledge alternatives to protect the UIM carriers.

[49]*Id*.

[50]*Id*. at 649-650; *compare Augustine*, 940 P.2d at 120.

[51]Utah Code Ann. §  31A-22-305.3(5)(a).

### IV. Bad Faith

Because the Court finds the contract provision is valid, the Court finds Defendant did not act in bad faith.  Therefore, the Court will grant the Motion to Dismiss Plaintiff's bad faith claim.

### V. Conclusion

For the reasons stated above the Court finds the declarations made by A. Bryce Dixon to be irrelevant to the issue at hand and are not factual in nature as required by the Federal Rules of Civil Procedure.  The Court also finds the contractual provision to be in line with the applicable statutes and is therefore not void for public policy.  It is therefore

ORDERED that Defendant's Motion to Strike Declarations of A. Bryce Dixon (Docket No. 18) is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 15) is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED.

At oral argument Plaintiff's counsel made an oral request to certify this question to the Utah Supreme Court.  This Court does not deem an oral request at oral argument as sufficient for such a request.  Further, this Court does not believe it is an appropriate issue for certification.  The Clerk of Court is directed to enter a judgment in favor of Defendant.

DATED   December 9, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge